1
2
3
4
5
6
7
8
9
10
11

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

JENNIFER VALDOVINOS,                          CASE NO. CV F 11-1182 LJO MJS

                Plaintiff,          **ORDER TO DISMISS CLAIMS AGAINST DEFENDANT DEBBRA VLOTHO**
(Doc. 7.)

      vs.

KRAFT FOODS GLOBAL, INC.,
et al,

                Defendants.
_____/

## INTRODUCTION

Defendants Kraft Foods Global, Inc. ("Kraft") and Kraft human resources manager Debbra Vlotho ("Ms. Vlotho") seek to dismiss plaintiff Jennifer Valdovinos' ("Ms. Valdovinos'") wrongful termination in violation of public policy and intentional infliction of emotional distress ("IIED") claims against Ms. Vlotho in absence of factual and legal support. Ms. Valdovinos does not oppose dismissal of the claims against Ms. Vlotho. This Court considered Kraft and Ms. Vlotho's (collectively "defendants'") F.R.Civ.P. 12(b)(6) motion to dismiss on the record without a hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES the claims against Ms. Vlotho.

1

1

### BACKGROUND[1]

2

### Ms. Valdovinos' Employment And Termination

3    In October 2010, Ms. Valdovinos began temporary employment with Kraft.  On January 17,

4    2011, Kraft hired Ms. Valdovinos as a full-time barrel fill technician.

5    On March 21, 2011, Ms. Valdovinos notified Kraft that she was pregnant.  On March 29, 2011,

6    Ms. Valdovinos met with Ms. Vlotho, and on March 31, 2011, Ms. Valdovinos was provided a lab

7    technician position.  After the March 29, 2011 meeting, Ms. Vlotho continued to communicate to Ms.

8    Valdovinos that Ms. Valdovinos "should take disability leave."  Ms. Valdovinos' physician concluded

9    that work restrictions did not preclude Ms. Valdovinos' lab technician work, and Ms. Valdovinos

10   communicated as much and provided the physician's restriction to Ms. Vlotho.

11   In April 2011, Ms. Valdovinos applied for a permanent lab technician position.  On April 21,

12   2011, Ms. Vlotho met with Ms. Valdovinos to discuss her application and informed Ms. Valdovinos that

13   she "should ask her doctor to restrict plaintiff from work so that plaintiff could take FLMA leave."

14   On April 29, 2011, Ms. Vlotho initiated an investigation "for the purpose of firing plaintiff."  Ms.

15   Vlotho interviewed Ms. Valdovinos, suspended her, and ultimately terminated Ms. Valdovinos on May

16   3, 2011.

17

### Ms. Valdovinos' Claims

18   The complaint alleges a (first) wrongful termination in violation of public policy claim ("*Tameny*

19   claim") that defendants discriminated against and terminated Ms. Valdovinos based on her pregnancy

20   to violate public policy and the California Fair Employment and Housing Act, Cal. Gov. Code, §§

21   12900, et seq.[2]  The complaint alleges a (second) IIED claim that Ms. Valdovinos suffered servere

22

---

23        [1]    The factual background is derived generally from Ms. Valdovinos' Complaint for Damages ("complaint"),
     the target of defendants' challenges.

24

25        [2]    The complaint alleges a claim under *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172, 164 Cal.Rptr.
     839, 842 (1980) ("an employer's traditional authority to discharge an at-will employee may be limited by statute . . . or by
     considerations of public policy").  There can be no right to terminate for an unlawful reason or purpose that contravenes

26   fundamental public policy. *Silo v. CHW Med. Found.*, 27 Cal.4th 1097, 1104, 119 Cal.Rptr.2d 698, 703 (2002). "It is settled
     that an employer's discharge of an employee in violation of a fundamental public policy embodied in a constitutional or

27   statutory provision gives rise to a tort action." *Barton v. New United Motor Manufacturing, Inc.*, 43 Cal.App.4th 1200, 1205,
     51 Cal.Rptr.2d 328 (1996); *Cabesuela v. Browning-Ferris Industries of Cal., Inc.*, 68 Cal.App.4th 101, 107, 80 Cal.Rptr.2d

28   60 (1998).  The plaintiff's remedy is a common law tort action: "A wrongful act committed in the course of a contractual

1  emotional distress in that "defendant terminated plaintiff without good cause and instead terminated

2  plaintiff because plaintiff refused to take pregnancy leave."

3  **DISCUSSION**

4  **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

5      Defendants seek to dismiss the *Tameny* claim against Ms. Vlotho as legally barred in that

6  *Tameny* liability is limited to employers, which Ms. Vlotho is not.  Defendants further seek to dismiss

7  the IIED claim against Ms. Vlotho in absence of allegations of her extreme and outrageous conduct.

8      "When a federal court reviews the sufficiency of a complaint, before the reception of any

9  evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

10  a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

11  claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development*

12  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

13  a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

14  theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*

15  *Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency

16  of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

17      In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

18  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

19  can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80

20  F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

21  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

22  *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not

23  assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*

24  *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove

25  facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been

26  alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,

27  _____

28  relationship may afford both tort and contractual relief." *Tameny*, 27 Cal.3d at 174-175, 164 Cal.Rptr. at 843.

3

459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can

4

1
2
3

choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

4   *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

5   With these principles in mind, this Court turns to defendant's attacks on the *Tameny* and IIED
6   claims against Ms. Vlotho.

7   ### *Tameny* Claim Against Ms. Vlotho

8   Defendants argue that the *Tameny* claim is barred against Ms. Vlotho in that a *Tameny* claim may
9   be pursued against only employers.

10  "As a matter of law, only an employer can be liable for the tort of wrongful discharge in violation
11  of public policy." *Khajavi v. Feather River Anesthesia Medical Group*, 84 Cal.App.4th 32, 53, 100
12  Cal.Rptr.2d 627 (2000). A "*Tameny* action for wrongful discharge can only be asserted against an
13  employer. An individual who is not an employer cannot commit the tort of wrongful discharge in
14  violation of public policy; rather, he or she can only be the agent by which an employer commits that
15  tort." *Miklosy v. Regents of Univ. of Cal.*, 44 Cal.4th 876, 900, 80 Cal.Rptr.3d 690 (2008). "Therefore,
16  a common law *Tameny* cause of action for wrongful termination, or a claim of retaliation, lies only
17  against the employer, not against the supervisor through whom the employer commits the tort." *Lloyd*
18  *v. County of Los Angeles*, 172 Cal.App.4th 320, 330, 90 Cal.Rptr.3d 872 (2009).

19  Defendants are correct that as a human resource manager, Ms. Vlotho is not an employer subject
20  to *Tameny* liability.

21  ### IIED Claim Against Ms. Vlotho

22  Defendants fault the complaint's failure to allege Ms. Vlotho's extreme and outrageous conduct
23  to support an IIED claim against her.

24  The elements of an IIED claim are: (1) defendant's outrageous conduct; (2) defendant's intention
25  to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering
26  severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious
27  (outrageous) conduct and the emotional distress. *Nally v. Grace Community Church of the Valley*, 47
28  Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989)*;Cole*

*v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987).[3]  The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)).  Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

To support an IIED claim, the conduct must be more than "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79 (1991).  The defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 1001, 25 Cal.Rptr.2d 550 (1993).  The California Supreme Court has further explained:

> "The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." . . . The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

"Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous." *Berkley v. Dowds,* 152 Cal.App.4th 518, 534, 61 Cal.Rptr.3d 304 (2007).  There is no bright line standard for judging outrageous conduct, and a

---

[3]      Other California courts have identified the elements as "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran,* 65 Cal.App.4th 488, 494, 76 Cal.Rptr.2d 540 (1998) (citing *KOVR-TV, Inc. v. Superior Court,* 31 Cal.App.4th 1023, 1028, 37 Cal.Rptr.2d 431 (1995)).

1  case-by-case appraisal of conduct is required.  *Cochran v. Cochran*, 65 Cal.App.4th 488, 494, 76

2  Cal.Rptr.2d 540 (1998).

3         Morever, "'severe emotional distress' means highly unpleasant mental suffering or anguish 'from

4  socially unacceptable conduct' . . . , which entails such intense, enduring and nontrivial emotional

5  distress that 'no reasonable [person] in a civilized society should be expected to endure it.'"  *Schild v.*

6  *Rubin*, 232 Cal.App.3d 755, 762-763, 283 Cal.Rptr. 533 (1991) (citations omitted).

7         Defendants note the absence of allegations to support that Ms. Vlotho caused Ms. Valdovinos

8  to suffer emotional distress.  As to Ms. Vlotho, the complaint merely alleges that:

9         1.    On March 29, 2011, Ms. Valdovinos met with Ms. Vlotho;

10        2.    After the meeting, Ms. Vlotho continued to communicate to Ms. Valdovinos that Ms.

11              Valdovinos "should take disability leave";

12        3.    Ms. Valdovinos communicated to Ms. Vlotho that Ms. Valdovinos' physician concluded

13              that Ms. Valdovinos could work as a lab technician;

14        4.    On April 21, 2011, Ms. Vlotho met with Ms. Valdovinos to discuss Ms. Valdovinos' lab

15              technician application and informed Ms. Valdovinos that she should ask her doctor to

16              restrict Ms. Valdovinos from work so that Ms. Valdovinos could take FLMA leave; and

17        5.    Ms. Vlotho initiated an investigation, interviewed Ms. Valdovinos, suspended her, and

18              ultimately terminated her.

19        Defendants characterize such allegations as "personnel management activities."  Defendants

20 argue that termination is not extreme and outrageous conduct to support an IIED claim.  "Every

21 employee who believes he has a legitimate grievance will doubtless have some emotional anguish

22 occasioned by his belief that he has been wronged."  *Magnuson v. Burlington Northern, Inc.*, 576 F.2d

23 1367, 1369 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318 (1978).  "Managing personnel is not

24 outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare

25 and prosperity of society. A simple pleading of personnel management activity is insufficient to support

26 a claim of intentional infliction of emotional distress, even if improper motivation is alleged."  *Janken*

27 *v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80, 53 Cal.Rptr.2d 741 (1996).

28        The complaint alleges no more than personnel management and falls short of extreme and

1    outrageous conduct to warrant dismissal of the IIED claim against Ms. Vlotho.

2                                   **CONCLUSION AND ORDER**

3            For the reasons discussed above, this Court:

4        1.      DISMISSES with prejudice this action against Ms. Vlotho;[4]

5        2.      DIRECTS the clerk to enter judgment in favor of defendant Debbra Vlotho and against

6                plaintiff Jennifer Valdovinos in that there is no just reason to delay to enter such

7                judgment given that Ms. Valdovinos' claims against Ms. Vlotho and Ms. Vlotho's

8                alleged liability are clear and distinct from claims against and liability of Kraft;

9        3.      ORDERS Kraft, no later than September 14, 2011, to file a response to the complaint.

10               IT IS SO ORDERED.

11   **Dated:    August 25, 2011**                  **/s/ Lawrence J. O'Neill**
                                              UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____
        [4]      Ms. Valdovinos' failure to oppose Ms. Vlotho's dismissal suggests that Ms. Valdovinos lacks facts to
28   support an attempt to amend her complaint.